```
                   UNITED STATES DISTRICT COURT

                    DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA  )
                          )
         V.               )   CRIMINAL NO. 05-10198-MLW
                          )
SEAN SIMON JOHN JOYCE     )
```

**JOINT SENTENCING MEMORANDUM AND
MOTION FOR WAIVER OF PRESENTENCE REPORT**

**I.   Joint Request to Waive Presentence Report**

The parties jointly request, pursuant to Fed. R. Crim. P. 32(b)(1), that the presentence investigation and report in this matter be waived, and the Court conduct a combined plea and sentencing hearing as soon as the Court's schedule permits. As grounds therefor, the parties suggest that the information in the record before this Court enables it to exercise its sentencing authority meaningfully under 18 U.S.C. §3553. In support thereof, the parties provide the Court herein with a stipulation of the offense conduct supporting the one-count Information to which the defendant has agreed to plead guilty, charging him with interference with flight crew members and attendants, in violation of 49 U.S.C. §46504. The parties also refer the Court to the Pretrial Services Report, prepared by the Pretrial Services Office upon the defendant's initial appearance in this case. The parties also inform the Court that post-sentencing supervision of the defendant by the United States Probation Office will not occur, as the defendant is a citizen and resident

of England, and will return to that country as soon as this matter is resolved.  The parties also inform the Court that the joint recommendation of the parties will be that the defendant be sentenced to time-served (five days).  If the Court accepts the parties joint recommendation, a presentence report will not be needed by the Bureau of Prison to assist in its designation responsibilities.

### II.  Joint Stipulation of Facts

Defendant Sean Simon John Joyce ("Joyce") is a 38 year old British citizen born on November 12, 1966.  He has lived his entire life in and around London, England.  He is married with one child and two grown step-children who he and his wife raised.  He has long-time steady employment in London as a painting contractor.  On or about June 20, 2005, Joyce flew from England to Florida to visit and stay with his mother and step-father, who reside in Florida.  On July 11, 2005, after a three week visit, Joyce flew on a US Airways flight from Miami, Florida to Charlotte, North Carolina, on the first leg of his return to England.

At approximately 8:10 pm on July 11th, Joyce departed Charlotte on US Airways Flight 94, a non-stop flight to London.  Flight 94 carried 235 passengers and 12 crew members.  The airplane is a civil aircraft of the United States and is registered as required by law.  At approximately 10:30 pm Flight

94 was located 37,000 feet over the Atlantic Ocean, approximately 150 nautical miles east of Boston.  Dinner had been served, during which Joyce purchased and drank two mini-bottles of wine.  He also during or at the conclusion of dinner took a non-prescription pain killer for a severe sinus infection he was suffering from, and a prescription sleeping pill (Ambien) which he had been provided to him by his mother.

After the wine was consumed and the pills were ingested, Joyce began to act strangely.  The passenger next to him reported that he started slurring his speech and became aggressive.  He threw a cup at passengers in front of him and grabbed the wrist of the passenger next to him when she got up to permit him to use the men's room.  He became violent at this time, took off his shirt, and had to be subdued by flight attendants and passengers.  He pushed at least one attendant and butted another crew member.  While Joyce was being subdued and restrained (by flexi-cuffs) he continued to be violent and belligerent, struggled against his subduers, swore repeatedly, and threatened to kill both himself and those on the plane.  Joyce was removed to a galley area of the plane were he was kept in restraints throughout the remainder of the flight.

The captain of Flight 94 made the decision to divert the flight to Logan Airport.  At approximately 11:00 pm, Flight 94 landed in Boston and Joyce was arrested and removed from the

3

plane.  Joyce's belligerence continued even while he was being removed from the airplane by Massachusetts State Police Troopers. After Joyce was removed from Flight 94 and passengers and crew members were interviewed, the airplane departed for London, where it landed approximately three hours behind schedule.

Joyce remembers almost nothing about Flight 94, and remembers nothing at all from the time that he finished his dinner and wine until he woke in a jail cell at Logan Airport on the morning of July 12th.[1]

### III. Joint Guideline Calculations

U.S.S.G. §2A5.2 (Interference with Flight Crew Member or Flight Attendant) is the controlling guideline provision for the charge in the Information.  In an instance, such as here, where the offense conduct does not involved intentionally endangering or recklessly endangering the safety of the aircraft, and the BOL for the assault that occurred is less than 9, the BOL is 9. U.S.S.G. §2A5.2(a)(4).  By agreeing to waive indictment and plead to the Information in this case, Joyce has clearly demonstrated acceptance of responsibility for his offense and his BOL should be decreased by 2 levels.  U.S.S.G. §3E1.1(a).

Joyce has only one minor conviction from almost 20 years ago.  Accordingly, his Criminal History Category is I, and his

---

[1] For that reason, Joyce expects to enter a plea of guilty under the Supreme Court's decision in <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970).

advisory guideline sentencing range is 0-6 months.

### IV. Joint Sentencing Recommendation

The parties jointly recommend that the Court sentence Joyce to time-served, followed by two years of supervised release, and a $100 special assessment. Joyce was detained in federal custody from his arrest on the night of July 11, 2005 until he was released on conditions on July 15, 2005, a total of five days.

### V. Government's Reasons for Time-Served Recommendation

Although the conduct in this case was extreme, the government has concluded that Joyce's actions on board Flight 94 were the unfortunate result of a terrible reaction to the prescription sleeping pill he took, perhaps aggravated by a moderate amount of wine. There is nothing in Joyce's background that would explain or predict the violence that followed his combination of Ambien and wine. There is nothing in the events leading up to his belligerence that suggested those events might occur. There was no confrontation with an attendant or fellow passenger. There were no rules or directions that Joyce objected to, or refused to follow. Nothing in particular, except the medication and alcohol, seems to have triggered his initial outburst.

A website (RxList.com) reports the following reactions and side-effects that can accompany Ambien:

> A variety of abnormal thinking and behavior changes
> have been reported to occur in association with the use

> of sedatives/ hypnotics [such as Ambien]. Some of
> these charges may be characterized by decreased
> inhibition (e.g., aggressiveness and extroversion that
> seemed out of character), similar to effects produced
> by alcohol and other CNS depressants. Other reported
> behavioral changes have included bizarre behavior,
> agitation, hallucinations, and depersonalization.
> Amnesia and other neuropsychiatric symptoms may occur
> unpredictably.

The website also reports that Ambien should not be taken with alcohol and "should only be ingested immediately prior to going to bed."

In the government's view, Joyce's culpability arises from his voluntary ingestion of a prescription sleeping that was not prescribed for him, coupled with his voluntary consumption of alcohol, in violation of the warnings that accompany Ambien. That being said, Joyce's level of culpability is not as egregious as his conduct. It is hard to say that he should be held fully responsible for actions that appear to be a rare and freakish reaction to medication and alcohol. Joyce has already spent five days in jail, and has been prevented from returning to his home and employment in England for almost a month. In the government's view, a time-served disposition and a minor fine is the appropriate sentence to impose in this case.

| SEAN SIMON JOHN JOYCE | MICHAEL J. SULLIVAN |
| --- | --- |
| | United States Attorney |
| By: /s/ Michael C. Andrews | By: /s/ Timothy Q. Feeley |
| MICHAEL C. ANDREWS, ESQ. | TIMOTHY Q. FEELEY |
| Attorney for Defendant | Assistant U.S. Attorney |
| (617) 951-0072 | (617) 748-3172 |

August 10, 2005